IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **AVIALAE S DE RL DE CV,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-19-CV-380-PRM** |
| | § | |
| **CUMMINS INC,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

On this day, the Court considered Defendant Cummins Inc.'s [hereinafter "Defendant"] "Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (ECF No. 10) [hereinafter "Motion to Dismiss"], filed on February 28, 2020, Plaintiff Avialae S. De R.L. De C.V.'s [hereinafter "Plaintiff"] "Response to Defendant's Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (ECF No. 14) [hereinafter "Response"], filed on March 23, 2020, and Defendant's "Reply in Support of its Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (ECF No. 15), filed on March 30, 2020. After due consideration, the Court is of the opinion that Defendant's Motion should be granted in part and denied in part for the reasons stated herein.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a contract dispute between Plaintiff, a Mexican limited liability company (*sociedad de responsibilidad limitada*) that manufactures industrial component parts, and Defendant, an Indiana corporation that manufactures diesel engines. First Am. Compl. [hereinafter "Compl."] ¶¶ I.A, I.B, III.C, Feb. 20, 2020, ECF No. 7.  Plaintiff alleges that it entered several contracts to supply Defendant with diesel engine component parts, spanning a series of projects including a Dual Source Project, Shim Rework[1] Project, Washer/Shim Prototype Project, Housing Rework Project, CRIN Rework Project, and MRC Injector Rework Project.  *Id*. at ¶¶ III.C–F.  Plaintiff now brings breach of contract claims against Defendant arising out of each of these projects.

## A.   The Dual Source Project

According to Plaintiff, the Dual Source Project arose out of Defendant evaluating Plaintiff as a new supplier of component diesel engine parts.  *Id*. at ¶¶ III.J.2–3.  After a series of negotiations, Defendant provided Plaintiff with the specifications for several parts, and Plaintiff manufactured the parts for Defendant as samples.  *Id*. at ¶¶ III.J.7, 11–15.  Thereafter, Defendant informed Plaintiff that

---

[1] The term "rework" refers to the manufacturing process, by which one "reprocess[es] (as used material) for further use."  Merriam–Webster's Collegiate Dictionary (10th ed. 2001).

Plaintiff had been selected "for development as a [supplier]." *Id*. at
¶ III.J.19.  In response to requests from Defendant, Plaintiff "invested
in additional engineering resources, materials, and equipment" to
prepare to produce the parts for Defendant. *Id*. at ¶ III.J.24.

On August 15, 2015, Defendant issued three purchase orders to
Plaintiff for parts described as "Washer Sealing."  Resp. Ex. B.  On
August 28, 2015, Defendant issued three additional purchase orders to
Plaintiff for parts described as "Shim." *Id*.  Each purchase order
included a quantity of 12,000 parts, a unit price, and a delivery date.
*Id*.  Plaintiff alleges that the first three of these purchase orders "mark
Plaintiff's entry into the Dual Source Project."  Compl. at ¶ III.J.28.

Plaintiff claims that on or about November 27, 2015, Defendant
cancelled all six of these purchase orders, and informed Plaintiff that
the Dual Source Project "had not been approved." *Id*. at ¶ III.J.36.
Plaintiff alleges that "[t]he cancellation of the Dual Source Project
constitutes a breach of the contract," and that Plaintiff is entitled to
"$34,000, for equipment and other expenses incurred in performing
under the contract," as well as "annual sales of approximately 1,750,000
units at a Unit Price ranging between $0.50 and $1.45." *Id*. at
¶¶ IV.N–P.

### 1.   *The Shim Rework Project*

According to Plaintiff, the Shim Rework Project encompasses one
of five product families of parts related to the overarching Dual Source

Project.  *Id*. at ¶¶ III.E., III.K.5.  Plaintiff alleges that the project arose out of Defendant asking Plaintiff to "rework component 4928212-NC." *Id*. at ¶ III.K.2.

Initially, in an attempt to secure the project, Plaintiff provided sample parts and a PPAP[2] to Defendant "at an estimated cost of $10,375."  *Id*. at ¶ III.K.4.  Plaintiff indicates that the parties then "sign[ed] an agreement for 1,000 [pieces] per week" at a price of $0.47 per piece.  *Id*. at ¶¶ III.K.9, 11–12.[3]  Pursuant to the agreement, Plaintiff claims that it received two purchase orders from Defendant on June 11, 2015, orders IND3229587 and IND3229588.[4]  *Id*. at ¶ III.K.13. Plaintiff completed the work associated with the first purchase order, but Defendant did not send Plaintiff parts to be reworked for the second purchase order.  *Id*. at ¶ III.K.15–16.  Plaintiff alleges that thereafter,

---

[2] "PPAP" refers to the Production Part Approval Process, a process that allows a manufacturer to approve and verify parts delivered by a supplier.  Production Part Approval Process, Automotive Industry Action Group, https://www.aiag.org/quality/automotive-core-tools/ppap (last visited Jul. 7, 2020).

[3] Plaintiff does not attach the alleged signed agreement to its pleadings.

[4] Plaintiff does not attach these specific purchase orders to its pleadings.  However, Plaintiff does attach Purchase Order 371001566-8 to its Response for two component parts, 4928218-NC and 4928217-NC, both for different variants of a "Shim Inferior de Inyector HD XPI," for 1,000 total parts at a $ 0.47 unit price.  Resp. Ex. B.

Defendant reduced part volumes in subsequent orders to 300 or 400 units per week. *Id.* at ¶ III.K.17.

Plaintiff claims that Defendant breached the signed agreement between the parties when it did not provide parts to be reworked for the second initial purchase order, when it reduced the volume of its orders, and when it placed an expedited order for the rework of approximately 13,000 parts. *Id.* at ¶¶ V.I–M. As a result, Plaintiff seeks economic damages which "arise from [Defendant's] failure to meet the volumes agreed upon in the written agreement," as well as "$10,375 of unrecovered costs, plus set-up, supplies, and other charges." *Id.* at ¶¶ V.Q–S.

2.  *The Washer/Shim Prototype Project*

Like the Shim Rework Project, the Washer/Shim Prototype Project involves product families of parts from the Dual Source Project. *Id.* at ¶¶ III.E., III.L.4. According to Plaintiff, this project concerns the six purchase orders that Defendant issued to Plaintiff for the "Washer Sealing" and "Shim" parts, and subsequently canceled on or about November 27, 2015. *Id.* at ¶¶ III.L.1–4. Plaintiff avers that it "invested approximately $34,689 in equipment, materials, travel, engineering, and other expenses in preparing to fulfill the cancelled purchase orders." *Id.* at ¶ III.L.6. Accordingly, Plaintiff claims "approximately $34,689 in costs invested in this project that cannot be recuperated and approximately $10,500 in lost profits." *Id.* at ¶¶ VI.H–J.

5

### B.   The Housing Rework Project

The Housing Rework Project arises out of Defendant offering Plaintiff the opportunity to rework a specific "Housing Spring" part. *Id*. at ¶ III.M.1; Resp. Ex. B.  During negotiations between the parties, Plaintiff alleges that Defendant requested samples of the part and preparation of a PPAP "as [a] condition to grant the business." *Id*. at ¶ III.M.2.  Plaintiff then provided 100 sample pieces and the PPAP package to Defendant at an estimated cost of $11,875. *Id*. at ¶ III.M.3.

Plaintiff alleges that the parties subsequently executed a "signed working agreement,"[5] which provided that Plaintiff would rework 800 Housing Spring parts per week at a price of $1.17 per part. *Id*. at ¶¶ III.M.7–8; VII.F.  Plaintiff also attaches two purchase orders for the Housing Spring parts to its Response.  Resp. Ex. B.  The orders, issued by Defendant to Plaintiff, list specific prices, quantities, and delivery dates. *Id*.

According to Plaintiff, Defendant breached the signed agreement between the parties by shipping fewer parts to be reworked than required, and stopping all orders in May 2016.  Compl. at ¶¶ VII.G–H. Plaintiff also claims $11,875 in damages related to producing 100 Housing Rework samples, as well as associated investments in

---

[5] Plaintiff does not attach the alleged agreement to its pleadings.

"equipment, engineering, supplies, and other costs required to set-up this project." *Id*. at ¶ VII.I.

### C.   The CRIN Rework Project

The CRIN Rework Project arises out of Defendant negotiating with Plaintiff to rework "a family of Bosch parts known as CRIN-1 and CRIN-3." *Id*. at ¶ III.N.1.  On or about November 4, 2015, Defendant "request[ed] samples for evaluation." *Id*. at ¶ III.N.2.  Plaintiff characterizes Defendant's request for samples as Defendant "offer[ing] the manufacture of samples to plaintiff" and Plaintiff "agree[ing] to produce the samples." *Id*. at ¶ VIII.C.

Plaintiff delivered, and Defendant accepted, approximately 300 samples of the CRIN-1 and CRIN-3 parts.  *Id*. at ¶¶ III.N.3, 8–9. Plaintiff then sent Defendant a formal quote for the sample parts, including part prices and other fees, on or about January 14, 2016.  *Id*. at ¶ III.N.7.  However, Plaintiff states that on or about February 15, 2016, Defendant indicated it would not approve the CRIN Rework Project.  *Id*. at ¶ III.N.10.  In addition, Plaintiff alleges that Defendant did not pay for the samples delivered.  *Id*. at ¶¶ III.N.12–13.  Plaintiff claims that Defendant "is obligated to pay for the [samples] under Section 2.201(c)(1) of the Texas Business and Commerce Code," and seeks $ 3,385 in damages for manufacturing the samples.  *Id*. at ¶¶ VIII.D, VIII.G.

**D.    The MRC Injector Rework Project**

Lastly, the MRC Injector Rework Project arises out of negotiations between Defendant and Plaintiff regarding an MRC Injector part. *Id.* at ¶ III.O.2. According to Plaintiff, Defendant requested, and Plaintiff produced, a number of sample MRC Injector parts for evaluation. *Id.* at ¶¶ III.O.3, 7. Plaintiff alleges that Defendant "offer[ed] Plaintiff the manufacture of samples to evaluate a project" and "Plaintiff accept[ed] to manufacture the samples." *Id.* at ¶¶ IX.A, IX.B. However, Defendant postponed the project and did not seek orders of the part after receiving the samples. *Id.* at ¶ III.O.8. Plaintiff alleges $3,125 in damages as a result of Defendant failing to pay for the samples. *Id.* at ¶ IX.E.

**E.    Procedural History**

The events the Court describes here form the basis of at least one prior action between the parties. In *Avialae S. De R.L. De C.V. v. Cummins, Inc.*, 2018 WL 3342885 (W.D. Tex. Mar. 5, 2018), the Honorable David C. Guaderrama dismissed Plaintiff's claims without prejudice due to Plaintiff's failure to prosecute. Nevertheless, Plaintiff initiated the above-captioned cause by bringing nearly identical claims against Defendant in a new state-court action, which Defendant removed to the Court on December 27, 2019. Not. Removal, Dec. 27, 2019, ECF No. 1. In its Motion to Dismiss, Defendant argues that

Plaintiff's Complaint should be dismissed with prejudice for a failure to state a claim.  Mot. 1.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for "failure to state a claim upon which relief can be granted."  In determining whether a plaintiff states a valid claim, a court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs."  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A pleading that offers mere "'labels and conclusions' . . . will not do," especially when it simply tenders "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

9

**B.    Breach of Contract and Contract Formation**

In order to bring a breach of contract action pursuant to Texas Law, a party must allege, "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (citing *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App. 1997)).  A valid contract requires "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.'" *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App. 1999).

## III.   ANALYSIS

The Court is of the opinion that Defendant's breach of contract claims as to the Dual Source, Washer/Shim Prototype, Crim Rework, and MRC Injector Rework Projects should be dismissed because Plaintiff fails to allege that these claims are based upon valid contracts between the parties.  Although Plaintiff has adequately alleged breach of contract claims as to the Shim Rework and Housing Rework Projects, the Court is of the opinion that Plaintiff's damages claims related to these projects should be limited.

## A.    Offer and Acceptance

A breach of contract claim must arise out of a valid contract, and a valid contract requires mutual assent, or a valid offer and acceptance. The Court is of the opinion that all of Plaintiff's breach of contract claims arising out of the Dual Source Project and Washer/Shim Prototype Project should be dismissed because the contracts for these projects lack valid acceptances and mutual assent.

In a contract for the sale of goods,[6] an offer and acceptance "may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Tex. Bus. & Com. Code § 2.204.  An offer is "an act that leads the offeree reasonably to believe that assent (i.e., acceptance) will conclude the deal." *Axelson, Inc. v. McEvoy-Willis, a Div. of Smith Int'l (N. Sea), Ltd.*, 7 F.3d 1230, 1232–33 (5th Cir. 1993).

An order for goods issued by a buyer to seller, or a "purchase order," is often "the first document having the legal attributes of an offer." *Gulf States Utilities Co. v. NEI Peebles Elec. Prod., Inc.*, 819 F. Supp. 538, 549 (M.D. La. 1993) (collecting cases); *see also Maverick*

---

[6] The Court is of the opinion that the Uniform Commercial Code as adopted in the Texas Business and Commercial Code applies here, because the dispute between the parties concerns "transactions in goods." Tex. Bus. & Com. Code § 2.102.  The parts to be manufactured and reworked by Defendant qualify as "goods," because they are "things (including specially manufactured goods) which are movable at the time of identification to the contract for sale."  *Id*. at § 2.105(a).

*Int'l, Ltd v. Occidental Mukhaizna LLC*, 2011 WL 13134197, at \*3 (E.D. Tex. Mar. 1, 2011) ("A buyer's purchase order submitted in response to a price quotation is usually deemed to be the offer.").

However, a purchase order may also serve as an acceptance of an offer when it responds to a sufficiently detailed price quotation or proposal. *See Operating Tech. Elecs., Inc. v. Generac Power Sys., Inc.*, 2014 WL 11498165, at \*4 (N.D. Tex. Mar. 11, 2014), *aff'd*, 589 F. App'x 292 (5th Cir. 2015) ("A detailed quotation can, however, constitute an offer capable of acceptance, particularly 'if the communication from the alleged offeror is in response to a specific inquiry.'"); *Crest Ridge Const. Grp., Inc. v. Newcourt Inc.*, 78 F.3d 146, 152 (5th Cir. 1996) (Benavides, F., concurring) ("A price quotation, if detailed enough, can constitute an offer capable of acceptance.  However, to do so, it must reasonably appear from the price quote that assent to the quote is all that is needed to ripen the offer into a contract.").

Here, Plaintiff claims that purchase orders associated with the Dual Source Project and the Washer/Shim Prototype Project serve as Defendant's acceptance of a contract.  For the Dual Source Project, Plaintiff states that three purchase orders issued by Defendant "mark Plaintiff's entry into the Dual Source Project," acting as a final manifestation of mutual assent.  Compl. at ¶ III.J.28.  For the Washer/Shim Prototype Project, Plaintiff relies on these same purchase orders as a theory of contract formation.

12

However, Plaintiff makes no allegations that Defendant's three purchase orders respond to a price quote or other definitive terms of an offer issued by Plaintiff.  Prior to Defendant issuing these three purchase orders, the parties conducted negotiations and Plaintiff developed sample parts for Defendant, but Plaintiff fails to allege that the parties specified any terms of a deal.

Without pleading any facts that Defendant's three purchase orders respond to a price quotation or proposal, Plaintiff fails to state valid breach of contract claims as to the Dual Source and Washer/Shim Prototype Projects.  Unlike in similar cases where a purchase order responding to a price quotation constitutes an acceptance, here Plaintiff alleges no facts that would allow the Court to draw a reasonable inference that Defendant's purchase orders respond to and accept definitive terms of a deal proposed by Plaintiff.  *C.f. Mid-S. Packers, Inc. v. Shoney's, Inc.*, 761 F.2d 1117, 1121 (5th Cir. 1985) ("[Plaintiff's] letter proposal was its offer in the sense that it was a promise to sell at the listed prices, justifying [Defendant] in understanding that its assent, i.e., its purchase orders or telephone calls, would close the bargain.").  Thus, without alleging facts that would allow the Court to infer that there was acceptance and mutual assent between the parties, Plaintiff fails to allege the existence of a valid underlying contract for the Dual Source and Washer/Shim Prototype Projects.  Accordingly, the

Court is of the opinion that all of Plaintiff's breach of contract claims as to these projects should be dismissed.

### B.    Consideration

A breach of contract claim must also be based upon a contract that includes consideration.  Because the contracts related to the CRIN and MRC Injector Rework Projects lack consideration, all of Defendant's claims related to the CRIN and MRC Injector Rework Projects should be dismissed.

According to Texas law, "[a] contract must be based on a valid consideration; that is, mutuality of obligation." *Plains Builders, Inc. v. Steel Source, Inc.*, 408 S.W.3d 596, 602 (Tex. App. 2013) (citing *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997)). "Consideration is a bargained-for exchange of promises or return performance and consists of benefits and detriments to the contracting parties." *Marx v. FDP, LP*, 474 S.W.3d 368, 378 (Tex. App. 2015).

The contracts that allegedly form the basis of the CRIN and MRC Injector Rework Projects lack consideration because they do not involve any bargained for exchange.  Plaintiff claims that Defendant requested, and Plaintiff provided, CRIN and MRC Injector samples for evaluation. Plaintiff also characterizes this dealing between the parties as Defendant "offer[ing] the manufacture of samples" and Plaintiff "agree[ing] to produce the samples."  Compl. at ¶¶ VIII.B–C.  However, Plaintiff fails to allege that it received anything in exchange for

providing samples to Defendant, which is a basic requirement for valid consideration. *See Marx*, 474 S.W.3d at 378 ("Consideration is a bargained for exchange of promises."). For example, Plaintiff does not allege that Defendant promised to provide payment, or even a preferential option to enter a contract, in exchange for Plaintiff's promise to develop the samples. Accordingly, any agreement between the parties related to the CRIN and MRC Injector Projects lacks consideration, and all of Plaintiff's breach of contract claims associated with these projects fail.

In addition, contrary to Plaintiff's arguments, the Court notes that the specially manufactured goods exception pursuant to Texas Business and Commercial Code § 2.201(c)(1) does not allow Plaintiff to allege breach of contract claims for CRIN and MRC Injector sample parts. It is true that Plaintiff "specially manufactured" the CRIN and MRC Injector samples for Defendant, and these samples likely "are not suitable for sale to others in the ordinary course of business." Tex. Bus. & Com. Code § 2.201. However, the specially manufactured goods exception is irrelevant here because the exception only serves to excuse contracts from the requirements of the Statute of Frauds.[7] *Id.*

---

[7] The Statute of Frauds, as outlined in the Texas Business and Commercial Code, provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against

Irrespective of the exception, Plaintiff cannot allege a breach of contract claim when no contract exists between the parties due to a lack of consideration.

### C.    Remaining Claims

In considering Plaintiff's remaining claims, the Court is of the opinion that Plaintiff states credible breach of contract claims as to the Shim Rework and Housing Rework Projects.  Contrary to Defendant's arguments, these claims do not fail for lack of essential terms.  However, Plaintiff may only seek a limited set of damages for these claims.

First, the Court notes that Plaintiff's complaint adequately alleges all of the basic elements of a valid contract as to the Shim and Housing Rework Projects.  For the Shim Rework Project, Plaintiff alleges that the parties signed an agreement to rework 1,000 shim pieces a week at a price of $0.47 per piece, and for the Housing Rework Project, Plaintiff alleges that the parties executed a signed agreement to rework 800 Housing Spring parts a week at a fixed price of $1.17 per piece.  Based on these terms, the Court concludes that Plaintiff adequately pleads mutual assent between the parties, and that the contracts here include consideration.  Thus, Plaintiff may proceed on breach of contract claims

---

whom enforcement is sought or by his authorized agent or broker." Tex. Bus. & Com. Code § 2.201.

arising out of valid contracts between the parties as to the Shim and Housing Rework Projects.

Second, the Court is of the opinion that the alleged contracts related to the Shim and Housing Rework Projects do not fail for lack of essential terms.  "[E]ssential terms must be defined 'with sufficient precision to enable the court to determine the obligations of the parties.'" *Mack v. John L. Wortham & Son, L.P.*, 541 Fed. Appx. 348, 362 (5th Cir. 2013) (quoting *New Process Steel, L.P. v. Sharp Freight Sys.*, 2006 WL 947764, at *3 (Tex. App. Apr. 13, 2006)).  Here, Plaintiff fails to allege the duration of the agreement between the parties for the Shim and Housing Rework Project contracts.  However, the Court notes that in contracts for sales of goods, "[w]here the contract provides for successive performances but is indefinite in duration[,] it is valid for a reasonable time." Tex. Bus. & Com. Code § 2.309(b).  Thus, because Plaintiff alleges contracts for sales of goods with successive performance, Plaintiff need not allege a specific duration of the contracts for the Court to determine the obligations of the parties.  Accordingly, the Court is of the opinion that Plaintiff states credible breach of contract claims, based on valid contracts with sufficient essential terms, as to the Shim and Housing Rework Projects.

While Plaintiff may proceed on breach of contract claims arising out of the Shim and Housing Rework Projects, the Court is also of the opinion that Plaintiff's claims for damages related to these projects

17

should be limited in several respects.  For example, Plaintiff claims damages for producing sample parts and conducting manufacturing preparations prior to entering contracts with Defendant.  The Court notes that a Plaintiff ordinarily may not collect damages for expenses incurred in anticipation of a contract.  *See* 11 Corbin on Contracts § 57.6 (2019) (explaining that such damages are barred unless valuation of a breach is "impossible").  In addition, Texas Business and Commercial Code § 2.708 limits sellers of goods, such as Plaintiff, to recovering lost profits and incidental damages for a buyer's breach.  Accordingly, Plaintiff may not recover damages for samples and preparation work, because Plaintiff incurred these expenses in anticipation of a contract, and these costs do not qualify as lost profits or incidental damages.  *See id.* at §§ 2.703–2.710 (defining a seller's remedies).

In addition, Plaintiff makes claims for damages arising out of contracts with an indefinite duration.  Texas Business and Commercial Code § 2.309 provides that "unless otherwise agreed," a contract for the sale of goods with indefinite duration "may be terminated at any time by either party."  Thus, the Court notes that Plaintiff may only collect damages for a breach of contract up until the time that Defendant repudiated the contracts associated with these projects.

### D.  Dismissal

Lastly, the Court determines that Defendant's request to dismiss Plaintiff's claims with prejudice should be denied.  According to the

Fifth Circuit, "[a] district court's dismissal with prejudice is warranted only where a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice." *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008) (quotations omitted). The Court notes that the Honorable David C. Guaderrama dismissed Plaintiff's claims in a prior action for a failure to prosecute, and that in the above-captioned cause Plaintiff did not timely file its Response. *See* Order to Respond, Mar. 18, 2020, ECF No. 13. However, the Court is of the opinion that at this time, these events do not necessarily qualify as a record of clear delay or disregard of the Court's authority. Nevertheless, the Court warns Plaintiff that further delay or disregard of the Court's orders or rules may result in dismissal of the above-captioned cause with prejudice.

## IV. CONCLUSION

In sum, the Court concludes that Plaintiff's claims as to the Dual Source, Washer/Shim Prototype, Crim Rework, and MRC Injector Rework Projects should be dismissed. However, Plaintiff may proceed on claims related to the Housing Rework and Shim Rework Projects, provided that Plaintiff comply with limitations on damages as set out in this Order.

Accordingly, **IT IS ORDERED** that Defendant Cummins Inc.'s "Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (ECF No. 10) is **GRANTED IN PART** as to Plaintiff Avialae

S. De R.L. De C.V.'s claims arising out of the Dual Source Project, Washer/Shim Prototype Project, CRIN Rework Project, and MRC Injector Rework Project.

**IT IS FURTHER ORDERED** that Defendant Cummins Inc.'s "Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (ECF No. 10) is **DENIED** as to Plaintiff Avialae S. De R.L. De C.V.'s claims arising out of the Shim Rework Project and Housing Rework Project, subject to limitations on damages as outlined in this Order.

**IT IS FURTHER ORDERED** that Plaintiff Avialae S. De. R.L. De C.V.'s "First Amended Complaint" (ECF No. 7) is **DISMISSED WITHOUT PREJUDICE** as to its claims arising out of the Dual Source Project, Washer/Shim Prototype Project, CRIN Rework Project, and MRC Injector Rework Project.

Finally, the Court **WARNS** Plaintiff Avialae S. De. R.L. De C.V. that further delay in litigating this cause, or any disregard of the Court's orders, may result in the Court dismissing the above-captioned cause with prejudice.

**SIGNED** this **13th day** of **July, 2020**.

_____

**PHILIP R. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**

20